## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KENNETH GRAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-CV-198-TLW** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Kenneth Gray seeks judicial review of the decision by the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act ("SSA") for a period beginning July 31, 2010. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 9). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## ISSUES

On appeal, plaintiff contends that the ALJ erred in three ways: (1) by failing to fully develop the record, (2) by improperly weighing the opinions of a treating psychiatrist and a therapist, and (3) by failing to properly consider plaintiff's credibility. (Dkt. 16).

## STANDARD OF REVIEW

When reviewing a decision by the Commissioner, this Court is limited to determining whether the Administrative Law Judge ("ALJ") has applied the correct legal standards and whether substantial evidence supports the decision. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance. Id.

Substantial evidence is such that a reasonable mind might accept it as adequate to support the Commissioner's conclusion. Id. The Court is to "meticulously examine the record as a whole, including anything that might undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. This Court may not re-weigh the evidence, and it cannot substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands as long as it is supported by substantial evidence. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**Development of the Record**

Plaintiff first alleges that the ALJ erred by failing to procure records from Michael Quiroz, a therapist who interacted with plaintiff in both individual and group therapy settings for at least two years. (Dkt. 16 at 5; R. 21, 409). Plaintiff argues that though the ALJ "acknowledged" that Mr. Quiroz had met with plaintiff for such time, "despite that acknowledgment[,] the record contains only one record from Mr. Quiroz . . .." (Dkt. 16 at 5). Because the ALJ "knew that there were over two years of records from Mr. Quiroz that were not in the file," plaintiff contends "[h]is failure to procure those records is error." Id. at 6.

Plaintiff bears the burden of proof through step four, where the burden then shifts to the Commissioner at step five. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). Thus, it is a plaintiff's burden to prove the existence of an impairment or combination of impairments that establish disability. Additionally, "[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir. 2008). Here, the ALJ

reviewed the exhibits, including the medical evidence, with plaintiff's counsel at plaintiff's hearing. (R. 34-35). The ALJ specifically asked plaintiff's counsel whether she needed time to obtain and submit any additional evidence, to which she replied that she did not. (R. 35). Under these circumstances, plaintiff cannot fault the ALJ for failing to obtain additional records from Mr. Quiroz. Therefore, the Court finds no error on this issue.

## Weighing Opinions

In conjunction with his allegations regarding development of the record, plaintiff also criticizes the ALJ's choice to afford no weight to Mr. Quiroz's opinion. (Dkt. 16 at 5; R. 24). However, plaintiff alleges no demonstrable prejudice as a result.[1] Nor does he allege any inconsistency between Mr. Quiroz's records and those of the treating psychiatrists. Rather, plaintiff states that other medical records—which the ALJ did consider (R. 19-24)—"show continual problems with depression and anxiety" (dkt. 16 at 5) generally consistent with Mr. Quiroz's diagnoses of major depressive disorder and PTSD (R. 412).[2]

In fact, plaintiff concedes the existence of general consistency between the opinions actually weighed by the ALJ and the opinion of Mr. Quiroz. (Dkt. 16 at 5). Further, rather than

---

[1] Plaintiff does allege, "the ALJ's finding that the plaintiff was not credible might have been different if all the treating records had been available for review." (Dkt. 16 at 5). This allegation is mere speculation.

[2] The ALJ described Mr. Quiroz as "a therapist" (R. 21) and wrote that "no weight is given to Mr. Quiroz [sic] medical source statement at Exhibit 14F, as his is not considered an acceptable medical source" (R. 24). SSR 06-03p includes therapists in the list of "medical sources who are not 'acceptable medical sources.'" SSR 06-03p, 2006 WL 2329939, at *2. The opinions of these sources may be used as "other source" evidence. Id. at *3. In his briefing, plaintiff quotes the same Ruling, that "depending on the particular facts in a case . . . an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source' . . . ." (Dkt. 16 at 6) (quoting 2006 WL 2329939 at *5). However, as just discussed and as discussed below, Mr. Quiroz's opinion was generally consistent with the record. Plaintiff alleges no basis on which to believe that Mr. Quiroz's opinion, if given weight, would have changed the outcome.

alleging any prejudice resulting from the ALJ's failure to afford any weight to Mr. Quiroz's opinion, plaintiff argues that including further records from Mr. Quiroz "would have provided a more complete picture" of plaintiff's limitations. Id. The Court has already determined that the ALJ was under no obligation to obtain additional records from Mr. Quiroz, so this argument is unpersuasive. Moreover, as to the opinion of Mr. Quiroz that is in the record, when, as here, a medical opinion is generally consistent with other findings and "[t]here is no reason to believe that a further analysis or weighting . . . could advance [a plaintiff's] claim of disability," the alleged error is harmless. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012).

Plaintiff next alleges that the ALJ improperly weighed treating psychiatrist Dr. Christopher Blaisdell's opinion. (Dkt. 16 at 6-9). Dr. Blaisdell had treated plaintiff throughout 2012 and 2013, assessing him with depression, PTSD, possible mood disorder, psychosis, alcohol dependence in sustained remission, and EPS from antipsychotics. (R. 399-404, 414-434, 489-491). In his medical source statement, Dr. Blaisdell wrote that plaintiff had "severe depression, anxiety, and social paranoia [that] would impede ability to function on a sustained basis." (R. 489). However, the ALJ concluded that "[l]ittle weight is given to treating psychiatrist Blaisdell's medical source statement at Exhibit 21F, which showed the claimant was more limited than his testing and evaluation appeared on September 18, 2013, and appears to be based on subjective statements made by the claimant." (R. 24).

The September 18 testing and evaluation referenced by the ALJ was a consultative evaluation of plaintiff by Minor Gordon, Ph.D. (R. 22, 448-454). During this evaluation, Dr. Gordon assessed plaintiff as "neatly dressed and groomed," "attentive and alert and maintained good eye contact," and with appropriate manner and attitude. (R. 449). Plaintiff's mood was "one of mild depression [and] anxiety." Id. Next, Dr. Gordon performed multiple tests on plaintiff,

4

including the Beck Anxiety Inventory and the Beck Depression Inventory. (R. 450). Plaintiff's scores were 35 and 46, respectively, which indicated "an individual suffering from a severe level of anxiety . . . [and] an extremely severe level of depression." Id. However, Dr. Gordon next wrote that, "[o]n both the Beck Anxiety and Beck Depression Inventory[,] Mr. Gray appears to have overstated his symptomatology inasmuch as scores on both instruments are highly inconsistent with today's mental status examination." Id.[3]

In contrast, Dr. Blaisdell's medical source statement—written less than a month after Dr. Gordon's consultative evaluation—included no test results or extrinsic evidence regarding plaintiff's mental state. Rather, when asked to "[i]dentify the factors (e.g., the particular medical signs, laboratory findings, or other factors described above) that support your assessment," Dr. Blaisdell wrote: "[Plaintiff] reports long-term dysfunction [and] depression . . . ." (R. 490).

Plaintiff correctly argues that a patient's descriptions of his or her impairments ("symptoms") are a component of medical evidence. Listing 12.00B. However, symptoms are only one component of this evidence, which also should include medically demonstrable phenomena ("signs") and laboratory results such as psychological test findings. Id. In this case, Dr. Blaisdell reported only plaintiff's descriptions, with no signs or test findings.[4] In contrast, Dr. Gordon's statement included multiple descriptions of plaintiff and his psychological test results, which supported his opinion that plaintiff had "overstated his symptomatology."

---

[3] The ALJ appears to have made a typographical error in his decision: he wrote that "scores on both instruments were highly consistent . . ." (R. 23), while Dr. Gordon wrote that plaintiff's scores were inconsistent with his mental status examination. (R. 450).

[4] Additionally, the medical notes from plaintiff's treatment with Dr. Blaisdell repeatedly show "MDD [major depressive disorder], recurrent and mild." (R. 400, 415, 417, 419). These records directly conflict with Dr. Blaisdell's medical source statement that plaintiff had "severe depression." (R. 489).

In <u>Hamilton v. Sec'y of Health & Human Servs.</u>, 961 F.2d 1495 (10th Cir. 1992), the Tenth Circuit upheld weighing the opinion of a psychiatrist, who saw the plaintiff one time, over the opinions of two treating psychiatrists when the ALJ "gave specific and legitimate reasons for rejecting the opinions of [the treating psychiatrists]." <u>Id.</u> at 1500. Here, the ALJ identified two specific, legitimate reasons for giving little weight to Dr. Blaisdell's opinion: (1) it conflicted with Dr. Gordon's opinion, which was supported by a combination of observation and psychological test findings, and (2) it appeared to be based solely on plaintiff's own descriptions. (R. 24). Accordingly, the Court finds that the ALJ did not err in weighing the medical opinions.

Though the ALJ specifically rejected Dr. Blaisdell's opinion and gave great weight to Dr. Gordon's opinion, plaintiff correctly notes that plaintiff's RFC assessment is generally more consistent with Dr. Blaisdell's opinion. (Dkt. 18 at 3). For example, Dr. Blaisdell found moderate limitations on plaintiff's interactions with coworkers, but Dr. Gordon found no such limitations. (R. 490, 453). Plaintiff's RFC requires that contact with coworkers should be brief, cursory, and incidental. (R. 16). In short, the ALJ rejected a more restrictive opinion, gave great weight to a less restrictive opinion, and ultimately determined plaintiff's RFC to be somewhere between the two.

Plaintiff alleges that "[t]he ALJ simply did not give an adequate explanation" for rejecting Dr. Blaisdell's opinion while writing an RFC that conformed in numerous aspects with the same opinion. (Dkt. 18 at 3). However, the Tenth Circuit found no error in an analogous case:

> [The ALJ] flatly rejected [the more restrictive opinion]. Rather, the ALJ accorded weight *only* to Dr. Amin's [less restrictive] opinion, and then tempered it, *in the claimant's favor,* by capping [the plaintiff's] RFC at the light level. The ALJ could have been more explicit in tying this mitigating gesture to evidence in the record, but we are aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated

> favorably in this way unless the ALJ provides an explanation for extending the claimant such a benefit . . . . [I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.

Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (emphasis in the original) (quoted in part in Keyes-Zachary, 695 F.3d at 1163 n.2). Here, the Court has already determined that the ALJ did not commit error in giving Dr. Gordon's opinion substantial weight. See supra at 4-6. The Court finds no error in the ALJ's tempered RFC.

**Credibility**

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). In addition to the general requirement that an ALJ's decision be supported by substantial evidence, the Tenth Circuit requires ALJs to make credibility findings that are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id.

Plaintiff contends that the ALJ did not articulate which of plaintiff's statements he found credible and which ones he did not find credible. But the Commissioner correctly argues that the ALJ is not required to identify those statements that he finds credible and not credible, so long as he "indicates to what extent he credited what [the claimant] said when determining the limiting effects of [the claimant's] symptoms." Keyes-Zachary, 695 F.3d at 1170.

The ALJ in this case used boilerplate language in finding plaintiff was "not entirely credible." (R. 23). Though disfavored, such boilerplate language is not reversible error when the ALJ includes analysis supporting it. See Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004) (Credibility analysis cannot rely solely on boilerplate language, and must address, "in a meaningful, reviewable way[,] the specific evidence the ALJ considered . . . ."). Here, the ALJ described an encounter during the hearing that goes directly to plaintiff's credibility: "The claimant said he could only sit for 15 minutes [sic (At that time [plaintiff] had been seated for about an hour. When the Administrative Law Judge told him he could stand, the claimant replied that was okay he could manage [sic].)" (R. 18). The record reflects this interaction as follows:

> Q [by ALJ]: How long can you sit . . . ?
> A [by plaintiff]: Oh, goodness. If I have my choice about it, about 15 minutes.
> Q: Well, it's been a lot longer than that now.
> A: Well that's – if I had my choice about it I'd stand up right now? [sic]
> Q: Well, if you need to stand up that's fine.
> A: No.
> Q: You just have to – please stay close to the microphone.
> A: Okay, it's okay, I can – I can manage.
> Q: Okay, it's been about an hour so far.
> A: Okay.

(R. 61). The ALJ's description of this interaction indicates that he did not give credit to the claimant's statement regarding sitting limitations when plaintiff clearly performed far beyond his claimed limitation during the hearing. "Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, *he may consider his personal observations* in

8

his overall evaluation of the claimant's credibility." <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1373 (10th Cir. 2000) (emphasis added).

The <u>Keyes-Zachary</u> court held that "although the ALJ may not have identified any specific incredible statements . . . his approach performed the essential function of a credibility analysis . . . ." 695 F.3d at 1170. Here, the ALJ identified a specific incredible statement directly refuted by plaintiff's own conduct during the hearing. Further, the ALJ gave great weight to Dr. Gordon's opinion that plaintiff overstated his symptomology, which directly undermined plaintiff's credibility. <u>See</u> <u>Broadbent v. Harris</u>, 698 F.2d 407, 414 (10th Cir. 1983) ("Exaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court. As a safeguard against such schemes, the determination of credibility is left to the observations made by the Administrative Law Judge as the trier of fact."). The ALJ's determination that plaintiff was "not entirely credible" (R. 23) used disfavored boilerplate language, but was nevertheless supported by analysis of specific evidence in the record. Any error made by the ALJ in his credibility determination was harmless.

<u>**CONCLUSION**</u>

For these reasons, the ALJ's decision finding plaintiff not disabled is **AFFIRMED**.

SO ORDERED this 26th day of September, 2016

_____

T. Lane Wilson
United States Magistrate Judge